IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00033-LTB-BNB

JAY MACTAS,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

    Defendant.

---

## ORDER ON FINAL REVIEW OF ADMINISTRATIVE RECORD

---

Plaintiff Jay Mactas brings this case pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), seeking injunctive relief against the defendant UNUM Life Insurance Company of America ("UNUM") pursuant to 29 U.S.C. § 1132(a)(3), precluding UNUM from reducing the amount of plaintiff's monthly disability payment due to an alleged overpayment (First Claim for Relief), and requesting equitable restitution of amounts recouped by UNUM since February 2006 when it first asserted that there had been an overpayment (Second Claim For Relief). The complaint also alleges a breach of fiduciary duty by UNUM as to which plaintiff seeks the same injunctive relief described above (Third Claim for Relief), and a Fourth Claim for Relief entitled "enforcement action under 29 U.S.C. § 1132(a)(1)(B)," which also seeks recovery of benefits allegedly due to plaintiff but not paid.

UNUM has brought a counterclaim against plaintiff which seeks a judgment in its favor "in the amount of the overpayment of Plan benefits," which apparently would

entitle UNUM to retain the amounts it has recouped since February 2006, and direct plaintiff to return the balance of the alleged overpayments which UNUM claims date from September 2002 (Counterclaim ¶ 13).  Both parties have moved for judgment on the administrative record (Dkt. # 30, 31).

On July 17, 2007, the defendant filed the administrative record with the court, and on July 18, 2007 the parties filed simultaneous briefs in support of their respective positions (Dkt. ## 30 and 32).  On July 20, 2007, plaintiff filed a motion to strike defendant's brief to the extent it cited to materials outside the administrative record (Dkt. # 35).  The parties were excused from filing response briefs until three weeks after the Court's ruling on the motion to strike (Dkt. # 39).  On November 16, 2007, the late Judge Phillip S. Figa of this Court denied plaintiff's motion to strike, stating essentially that he would give the challenged materials such weight or consideration as they may deserve when conducting his *de novo* review of the administrative record (Dkt. # 42 at 3).  After a further extension of time, both parties filed their response briefs simultaneously on January 4, 2008 (Dkt. ## 49 and 50).  After the untimely death of Judge Figa, the case was transferred to me on January 8, 2008.

## I.  FACTUAL BACKGROUND

Plaintiff was employed as an Executive Vice President with Asset Management Group ("AMG") when he suffered a stroke in March 1997.  At the time of his stroke he was covered by a long-term disability insurance policy issued to AMG by Defendant UNUM, which began paying disability benefits to plaintiff in September 1997 in the maximum amount of $6,000 per month.  Plaintiff was able to return to work at AMG on a part time basis in January 1998, and continued to work at AMG until his position was

2

eliminated at the end of 2001. During his term of re-employment with AMG plaintiff received residual, or partial disability, benefits from UNUM in a reduced amount which reflected the fact that he was earning income. UNUM refers to the reduction from the monthly benefit as an "earnings setoff' (Counterclaim ¶ 9).

As described by plaintiff, an issue arose in 2001 as to whether UNUM had been properly calculating the earnings setoff since a portion of plaintiff's earnings was derived from bonuses as opposed to regular periodic wages. Apparently, UNUM initially took the position that bonus money should be included when calculating the earnings setoff. However, by letter dated August 7, 2001, UNUM customer care specialist Patrick Taylor advised plaintiff that the inclusion of bonus income as part of the earnings setoff to reduce his monthly benefit was incorrect (AR 814). In an internal memorandum dated July 26, 2001, Taylor further explained that the recalculation of plaintiff's benefits arose from the fact that plaintiff received a bonus of $6,159 in March 2000, which was erroneously included in the earnings offset. The memorandum states that since the definition of basic monthly earnings ("BME") excludes bonuses, Taylor did not think that UNUM could offset for a bonus received (AR 810).

After his job at AMG was eliminated, plaintiff was unemployed until September 9, 2002, when he began work as Chief Investment Officer at Farrell-Roeh Group. As he was still unable to work full time, he continued to receive the partial long-term disability benefit from UNUM. In November 2005, UNUM notified plaintiff it was in the process of reviewing his benefits and requested him to provide additional earnings information and copies of his tax returns (AR 1012, 1009).

3

After reviewing the information, UNUM advised plaintiff in February 2006, that his benefits had been overpaid since 2002 in the amount of $86,991.78, and that going forward UNUM would begin to deduct $1,000 monthly from his benefits checks to recoup the overpayment (AR 944-43). UNUM's letter indicates that the basis for the reduction is due to the fact that bonuses are considered earnings that may be offset (AR 944). The letter references a "worksheet" prepared by a UNUM accountant, which is apparently contained in the record at AR 937. That worksheet references plaintiff's "bonus earnings" in an amount of $86,961.78 (AR 937). Although not stated explicitly in UNUM's letter it appears that UNUM also applied a "partial earnings reduction" going forward, so plaintiff's benefits are reduced not only by the $1,000 recoupment amount but also by projected future earnings (AR 937, *see also* AR 918).

Through his counsel plaintiff protested UNUM's determination and demanded a detailed explanation of the decision. After an exchange of letters UNUM set forth its rationale for the recalculation of benefits in a letter dated May 22, 2006, stating essentially that when plaintiff returned to work at AMG it had not included bonus income in the earnings reduction, but when he moved to a new employer it administered the claim under the policy provisions titled "Monthly Benefits" so as to "include bonuses in his return to work income" or earnings offset (AR 853).

On June 19, 2006, plaintiff filed his internal appeal of the determination with UNUM, arguing, in part, that inclusion of plaintiff's bonus income in the earnings setoff is unreasonable because nothing in the policy language supported a change of the calculation of benefit amount simply because plaintiff changed employers (AR 835), and that UNUM's determination in 2001 to exclude bonuses from its calculation of the

4

earnings offset made sense (AR 833). In a letter dated July 5, 2006, UNUM denied plaintiff's appeal (AR 786-84). The letter cites various provisions in the plaintiff's disability policy, which are discussed in detail below, but notes that the policy does not define the term "monthly earnings" as it is used in the formula to calculate the earnings offset (AR 785). Rather, the letter states, in regards to calculating monthly earnings for purposes of an offset, it administers the policy as follows:

> • If the insured returns to work with the employer, as defined above, in their own occupation, generally we do not include any form of compensation that was not included in the basic monthly earnings.
>
> • If the insured returns to work with the employer in a different occupation or with different income components, generally we include all earnings, regardless of whether they were included in the basic monthly earnings.
>
> • If the insured returns to work with a different employer, we include all earnings regardless of whether they were included in the basic monthly earnings.

AR 785. The letter does not indicate where this "policy" is found, but as explained by UNUM in its opening brief it is contained in an UNUM internal claims manual. The denial letter concludes that since plaintiff returned to work with a different employer in September 2002, bonuses should have been included in the calculation of plaintiff's return to work earnings (*id.*). Accordingly, UNUM denied plaintiff's appeal and upheld its decision to apply an overpayment and seek recoupment of the overpaid benefits.

## II. THE PARTIES' POSITIONS

Plaintiff filed this case in January 2007, contending that there is no provision in the disability policy that provides for the inclusion of bonus income in an earning offset when an insured returns to work with a new employer. He argues that the distinction made by UNUM is not supported by any language in the insurance policy, and is

5

irrational. He further argues that UNUM's current determination is inconsistent with its application of the policy language when it addressed plaintiff's bonus income in 2001. He contends that even if the interpretation were supported by the policy, UNUM waived its right to collect the asserted overpayment because it waited so long before notifying plaintiff, and that such recoupment at this time would be inequitable. Separately, plaintiff contends that reducing his benefits going forward based on prospective bonus income is improper. With respect to UNUM's counterclaim, plaintiff argues that defendant cannot establish the elements necessary to support a judgment under ERISA for restitution or unjust enrichment.

UNUM contends that it has correctly applied the policy provision regarding earnings offset, consistent with the policy language and its internal claims manual. It argues that its position is supported by the decision in *Riddell v. UNUM*, 457 F.3d 861 (8th Cir. 2006), a case which UNUM contends applied similar policy language in similar circumstances. It submits that it did not waive its claim to recoupment, as the long passage of time was due in part to plaintiff's failure to timely provide requested information. With respect to its counterclaim, UNUM argues that it has established a legal entitlement to a judgment for the overpayment of benefits to plaintiff.

## III. STANDARD OF REVIEW

The parties agree that UNUM's decision is subject to *de novo* review as the UNUM policy, issued long ago, does not contain the requisite grant of discretion to the claims administrator to trigger a deferential standard (Plaintiff's Brief at 3; Defendant's Brief at 11). In applying *de novo* review, I must give the language of the policy its common and ordinary meaning as a reasonable person in the position of the plan

participant, not the actual participant, would have understood the words to mean. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996) (quoting *Blair v. Metropolitan Life Ins. Co.,* 974 F.2d 1219, 1221 (10th Cir.1992)).

An ERISA plan like any contract must interpreted by "examining its language and determining the intent of the parties to the contract." *Capital Cities/ABC, Inc. v. Ratcliff*, 141 F.3d 1405, 1411 (10th Cir. 1998). I must construe the terms of the plan without deferring to either party's interpretation. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989). My "role is to determine whether the ERISA plan administrator made a correct decision based on the record before it at the time the decision was made." *Gilbertson v. AlliedSignal, Inc.* 172 Fed.Appx. 857, 860 (10th Cir. 2006) (internal quotations and citation omitted). In making this determination, my duty is to review the administrator's decision without deference to that decision and without any presumption of correctness. *Id.*

## IV. ANALYSIS

There is no dispute here that the plaintiff is disabled, or that he is entitled to some continuing disability benefits under his policy, or that there must be some offset to the benefits based on his earnings. The dispute between the parties is whether the earnings offset calculation should include bonus income received by the plaintiff since September 2002 in his position with Farrell-Roeh Group.

"Partial disability" or "partially disabled" is defined in the UNUM policy to mean that because of injury or illness the insured, while unable to perform all the material duties of his regular occupation on a full- time basis, is: 1. performing at least one of the material duties of his regular occupation or another occupation on a part-time or a

7

full-time basis; and 2. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness (AR 615). Although UNUM asserts in its response brief that the definition of "partial disability" does not apply to the plaintiff because he was a Class 1 employee under the policy (Defendant's Response Brief at 12), its own documents refer to the definition of partial disability and use the term "residual disability." (*See* AR 944, 926).

In any event, there is no dispute that the formulas for calculating monthly benefits for a disabled insured who returns to work are found at AR 613-12. There is also no dispute that plaintiff was earning more than 20% of his indexed pre-disability earnings, therefore the following formula is applicable to calculating plaintiff's benefits:

> But, if the insured is earning more than 20% of his indexed pre-disability earnings in his regular occupation or another occupation, the following formula will be used to figure the monthly benefit:
> (A divided by B) x C
>
> A = The insured's "indexed pre-disability earnings" **minus the insured's monthly earnings received while he is disabled**.
> B = The insured's "indexed pre-disability earnings".
> C = The benefit as figured above.

AR 612 (emphasis added). In plain words, this formula reduces the insured's monthly benefit by the percentage of his pre-disability earnings which he is still able to earn while disabled. What the parties dispute here is the method for measuring the "insured's monthly earnings received while he is disabled," or as referred to above the, earnings offset. The parties agree that the phrase "insured's monthly earnings" is not defined in the policy. Defendant asserts that the phrase includes bonus monies received; plaintiff asserts that it does not.

8

Plaintiff argues that UNUM's inclusion of bonus income in calculating the earnings offset for plaintiff in 2005 is inconsistent with the method used by UNUM when calculating the offset in 2001, when it expressly determined that plaintiff's bonus income would not be included in his earnings offset (*See* AR 814, 810). UNUM argues that it did not act inconsistently by including bonus income in the amount of the earnings offset in its 2005 calculation, because in 2001 plaintiff was working for the employer which purchased the disability policy, while in 2005 he was working for a different employer. In support of its argument that it acted consistently, UNUM points to the provisions from its internal claims manual quoted above, which excludes bonuses and other forms of compensation in the earnings offset if the insured returns to work for the same employer in his usual occupation, but includes such income "if the employee returns to work with a different employer."

This internal claims manual itself is not part of the administrative record in this case, although a copy was attached by UNUM as Exhibit A to its opening brief. That exhibit is one of the documents which plaintiff moved to strike from defendant's brief. Defendant has replied that whether or not the manual itself is in the record, it cited to its "policy" when it explained the denial of plaintiff's appeal in its letters of May and June 2006 (Defendant's Brief at 18).

In my view, whether the claims manual was part of the administrative record, or whether it guided the internal decision-making of UNUM's claims adjusters, is immaterial to resolution of the dispute before me. There is no dispute the claims manual is not part of the disability policy. There is no provision in the disability policy that incorporates or refers to the claims manual, or indicates that the definition or

9

application of any given term in the policy is governed by a claims manual. Thus, while the manual may well provide internal guidance for UNUM's employee's, and may furnish an administrative basis for the approach taken by UNUM in 2005, applying the standards of *de novo* review set forth above, I cannot find that a reasonable person in the position of a plan participant would understand that the disability policy is modified or controlled by provisions set forth in an internal claims manual. The provisions of UNUM's claims manual do not assist me in the resolution of this dispute.

Defendant further argues that its inclusion of bonus income in the earnings offset is supported by the decision in *Riddell, supra*. In that case, the Eighth Circuit upheld the decision of a claims administrator to include what amounted to "bonus" income in determining whether the insured was subject to an earnings offset. However, in my view, upon closer scrutiny the policy provisions at issue in *Riddell*, and the facts of the case, differ from those in the instant case.

As the *Riddell* decision states, the "disabled and working" section of Riddell's policy, which is similar to the partial disability section of plaintiff's policy, provided a calculation that reduces the monthly benefit based on "monthly disability earnings." *Id*. at 863. Unlike the situation in the instant case, the term "disability earnings" was expressly defined in Riddell's plan and means "the earnings which you receive while you are disabled and working." *Id*. The plan there, in employing the term "disability earnings," did not differentiate between bonus earnings and regular earnings.

The plaintiff in *Riddell* pointed to the policy definition of the term "monthly earnings," used elsewhere in the policy to calculate the insured's basic disability benefits, and noted that the definition of "monthly earnings" expressly excluded bonus

10

income.  He argued this exclusion should be read into the definition of "disability earnings," but the court rejected that argument, as both terms were expressly and separately defined, and the definitions differed.  *Id.* at 864.  Presumably, if the policy intended to exclude bonus income from the defined term "disability earnings" it would have done so as it did in defining "monthly earnings."  But in the case at bar, where the term "monthly earnings" as used in the earnings offset formula is not defined, this analysis of *Riddell* is not applicable.

In addition, there is no indication in the *Riddell* decision that the plan administrator's decision to include bonus income in the earnings offset depended, as in the instant case, on whether the insured resumed employment with the policyholder employer or with a different employer.  Moreover, the policy at issue in *Riddell* gave discretion to the plan administrator, so that its decision was reviewed under an abuse of discretion standard, and the issue was whether the plan administrator's interpretation was reasonable.  457 F.3d at 864.  By contrast, the instant case is on *de novo* review.

Plaintiff Mactas, on the other hand, argues that since the term "monthly earnings" as used in the earnings offset formula in his policy is not expressly defined, it should be interpreted to mean the same as the defined term "basic monthly earnings" which, like in *Riddell*, is used elsewhere in plaintiff's policy to describe the basic disability benefits.  The term "basic monthly earnings" is defined in plaintiff's policy to mean "the insured's monthly rate of earnings from the employer in effect just prior to the date disability begins.  It includes earnings from commissions, but not bonuses, overtime pay, or other extra compensation." AR 621.  Equating the undefined term "monthly earnings" with the

11

defined term "basic monthly earnings" as plaintiff urges, would result in the exclusion of bonus income from the earnings offset.

I do not find this argument persuasive. I cannot find that the absence of a definition of the term "monthly earnings" necessarily or even reasonably requires a definition from elsewhere in the policy to be engrafted onto the earnings offset formula. After all, the earnings offset and the basic disability benefits serve two different purposes under a disability policy. Indeed, defendant UNUM argues that these different purposes, as recognized in *Riddell*, supports the differentiation it seeks to make in the instant case. As stated in *Riddell*:

> The separate definitions of earnings are plainly designed to meet separate purposes. The Plan's goal is to provide a disabled employee with a monthly payment to replace a percentage of the salary the employee would have earned from the sponsoring employer absent the disability. The exclusion of previously earned bonus pay from the calculation of "monthly earnings" serves this purpose because the employer presumably did not guarantee that future "bonuses" would have been paid to the employee. If the disabled employee is subsequently able to find new gainful employment, the Plan envisions offsetting the full monthly payment by the amount of the employee's new income. Inclusion of all income actually received, including bonuses, in "disability earnings" serves this purpose.

457 F.3d at 864. I agree with the Eight Circuit that it is reasonable for a disability policy to differentiate the definitions of earnings when the purpose of one definition is to calculate replacement income, and the purpose of the other is to calculate earnings offset appropriate to derive the amount of replacement income. I also agree that it may generally be reasonable to include bonus income in the earnings offset when calculating partial disability benefits, and to so interpret the term "monthly earnings" as used in plaintiff's policy.

However, in the instant case, UNUM itself did not interpret the "monthly earnings" offset to include bonus income in plaintiff's own situation when he was working for AMG. It only did so when he was later working for Farrell-Roeh. UNUM's asserted rationale for the different treatment, as described above, was that plaintiff moved to a new employer, which had not procured the disability policy under plaintiff was insured. But, accepting the rationale that disability benefits are intended to replace a portion of the disabled employee's lost salary, as set forth in the *Riddell* case, the inclusion or exclusion of bonuses should not depend on whether the employee is working for the original employer or a different employer. Thus, while UNUM's claims manual policy may be a bright line guide for its internal administrators, I do not see how the distinction it makes between the original employer and a different employer reflects the common and ordinary meaning of the language in the earnings offset formula contained in the disability policy. Nor is such distinction one that a reasonable person in the position of the plan participant would likely make based on the language of the disability policy.

Moreover, I cannot fail to note that whereas UNUM asserts that the application of the claim manual dictated the differing treatment of plaintiff's bonuses between 2001 and 2005, the administrative record does not reflect any consideration of the claims manual when UNUM reversed its decision in 2001 and decided not to offset plaintiff's bonus income. Rather, as indicated in the memorandum from Patrick Taylor, he concluded that plaintiff's bonus should be excluded from the earnings offset in part because the definition of basic monthly earnings ("BME") excluded bonuses (AR 810) and not because of any policy contained in the UNUM claims manual. Thus I find no rationale in the record, or in the express language of the disability policy, for

13

differentiating the treatment of bonuses depending on which employer an insured is working for when he is entitled to partial disability.

As noted above, in performing a *de novo* review, I interpret the disability contract according to ordinary contract principles by examining its language and determining the intent of the parties to the contract. In an ERISA case, as in an ordinary contract case, I may look to extrinsic evidence if the disability contract is ambiguous. *Deboard v. Sunshine Min. & Ref. Co.,* 208 F.3d 1228, 1241 (10th Cir.2000). The phrase "monthly earnings received while he is disabled" is not defined, and is ambiguous in the context of whether or not it includes bonus income.

When a contract term is ambiguous, I may give effect to the intention of the parties by considering "competent evidence bearing upon the construction given to the instrument by the parties themselves, by their acts and conduct in its performance." *East Ridge of Fort Collins, LLC v. Larimer and Weld Irrigation Company*, 109 P.3d 969, 974 (Colo. 2005). In addition, where a provision in a disability policy is ambiguous, the doctrine of *contra prefereundum* is applicable if the policy is subject to a *de novo* review by the court, as in this case. *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1253 (10th Cir. 2007). Application of the doctrine provides for construction of the ambiguous language against the insurer. *Id*. at 1254-55.

Applying these principles, I find as follows. Because the phrase "monthly earnings received while he is disabled" is not defined, and is ambiguous in the context of whether or not it includes bonus income, and was interpreted by UNUM itself to exclude bonus income when plaintiff worked at AMG, and must be interpreted against the insurer, I find that the most reasonable interpretation of the term in the instant case

14

would be to exclude bonus income from the earnings setoff.  To the extent UNUM included plaintiff's bonus income in the earnings setoff after plaintiff commenced employment with Farrell-Roeh, I find that interpretation of the disability policy to be unreasonable and incorrect.

Accordingly, plaintiff is entitled to relief in this case.  The remaining issue is exactly what relief is appropriate.  As noted above, under his first claim plaintiff seeks an injunction; under his second claim an order of equitable restitution, under his third claim he seeks an injunction and restitution and under the fourth claim he appears to seek a declaratory judgment, although the complaint does not use that phrase.  In addition, while UNUM originally asserted that the overpayment was $86,991, it apparently reduced the amount asserted to be an overpayment in 2006 when plaintiff stopped working for Farrell-Roeh (Plaintiff's Brief at 16; Defendant's Response Brief (Dkt. # 50) at 16).  Thus UNUM asserts that at least the issue of deducting prospective bonus earnings has been mooted (*id.*).

As it is not clear to me what should be contained in the order granting plaintiff relief, I direct the parties to confer and attempt to reach a stipulation on an order that will provide plaintiff the appropriate relief consistent with my interpretation of the disability policy as set forth above.  No later than May 30, 2008, the parties shall submit the stipulated proposed order, or otherwise jointly advise me as to the status of the matter.  I will then enter a final order on this case.

Based on this ruling, I need not reach the other arguments advanced by plaintiff. I will dismiss with prejudice the counterclaim asserted by UNUM.

**CONCLUSION**

Plaintiff's Motion for Judgment on the Administrative Record is Granted (Dkt. # 31).

Defendant's Motion for Judgment on the Record is Denied (Dkt. # 30).

No later than May 30, 2008, the parties are directed to file a stipulated final order, or a status report indicating why they cannot reach a stipulated final order.


Dated: May __8__, 2008

                                      BY THE COURT:

                                      s/Lewis T. Babcock
                                      Lewis T. Babcock
                                      United States District Judge